UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DOMINIC NOVAK, et al.**<br><br>    **Plaintiffs,**<br><br>    v.<br><br>**CAPITAL MANAGEMENT &**<br>**DEVELOPMENT CORPORATION, et al.,**<br><br>    **Defendants;** | Civil Action No. 01-00039(HHK/JMF) |
| **GEORGE D. VALDIVIA,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**CAPITAL MANAGEMENT &**<br>**DEVELOPMENT CORPORATION, et al.,**<br><br>    **Defendants.** | Civil Action No. 01-00456 (HHK/JMF) |

**MEMORANDUM OPINION**

**I.    Background**

In its Memorandum Opinion dated February 26, 2004, this Court ordered Defendants to show cause why they should not be sanctioned for filing Defendants' Motion to Strike Untimely Witness Designations [#136]; Defendants' Second Motion to Strike Plaintiffs' Second Supplemental Answers to Defendant Capital Management and Development Corporation's First Set of Interrogatories 4, 5 and 6 [#140]; Defendants' Motion to Strike Plaintiffs' Second Request for Admissions to Defendants [#145]; and Defendants' Motion Objecting to Subpoenas Served on Royal & SunAlliance Insurance Company and Chubb Insurance [#146]. Memorandum Opinion of 2/26/2004 [#180] ("Mem. Op.") at 13. This Court also ordered Defendants to show

cause why they should not be sanctioned for advancing arguments, other than claiming privilege for documents reviewed by Dr. Sherman, in <u>Response to Plaintiffs' Motion to Strike Defendants' Specially Retained Expert Witnesses Due to Failure to Abide by the Court's Discovery Order and Rules 26(a)(2)(B) and 35</u> [#137]. <u>Id.</u>

## II.   Legal Standards

Under Rule 11(b) of the Federal Rules of Civil Procedure, an attorney, by filing any written motion or other paper, thereby certifies that "the claims, defenses, and other legal contentions" made in any motion, pleading, or filing "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11(b)(2).  Under Rule 11(c)(1)(B), the court may, on its own initiative, enter an order directing counsel to show cause why it has not violated the provisions of subsection (b) of Rule 11.  Fed. R. Civ. P. 11(c)(1)(B).

## III.   Responses to Show Cause Order for <u>Defendants' Motion to Strike Untimely Witness Designations</u> and <u>Defendants' Second Motion to Strike Plaintiffs' Second Supplemental Answers to Defendant Capital Management and Development Corporation's First Set of Interrogatories 4, 5, and 6</u>

### A.   Background

On June 13, 2003, Plaintiffs filed a supplemental response to Defendants' interrogatories that identified eleven previously unidentified witnesses, and on June 30, 2003, Plaintiffs filed a second supplement with eight additional names. Mem. Op. at 10.  Discovery in this case was scheduled to close on July 30, 2003. <u>Id.</u>  Defendants did not attempt to depose any of the witnesses or make a motion for an enlargement of the discovery period to do so.  Instead, on June 30, 2003, the Defendants filed a motion to strike the witnesses identified on June 13, 2003, and the next day they filed a motion to strike the witnesses identified on June 30, 2003. <u>Id.</u>

This Court held that both supplemental filings by Plaintiffs were timely under Rule 26. Id. at 11.  As stated in the Court's opinion, "'supplementing' previous information on the day discovery ends when it could have been supplemented sooner should not be tolerated," but in this case the new witnesses were identified forty-seven and thirty days prior to the discovery deadline. Id.  Thus, both motions to strike were "completely unwarranted" as Defendants had plenty of time before the end of the discovery period to depose the witnesses or file for an extension of the discovery deadline if both parties' counsels' schedules did not permit enough time to complete the depositions that had to be taken. Id. at 12.

Defendants argue that they had proper grounds to object because the case had been in litigation for more than two years and these witnesses were certainly known to Plaintiffs earlier than the date on which the supplemented witness list was provided. Defendants' Memorandum in Response to Order to Show Cause [#181] ("Def. Resp.") at 4-5.  Defendants argue this is especially true for witnesses personally known to Plaintiff, such as Plaintiff's grandmother, mother, and college friends. Id. at 5.

Defendants also contend that the time of disclosure in relation to the discovery deadline is only one factor for the court to consider. Id. at 6.  Defendants refer to United States v. Phillip Morris U.S.A., Inc., 219 F.R.D. 198 (D.D.C. 2004), where the court prohibited the government from adding 650 additional racketeering acts eleven months before trial, in support of their argument that Plaintiffs were required to provide justification for the delay in supplementing their interrogatory responses so close to the end of discovery. Def. Resp. at 6-7.  Defendants also rely on LaBadie Coal Co. v. Black, 672 F.2d 92, 95 (D.C. Cir. 1982), to argue that the length of time between their request for information and its disclosure by Plaintiffs is a proper ground upon which to object. Def. Resp. at 8.  In LaBadie, the D.C. Circuit acknowledged that "it was

3

grossly unfair to allow [defendant] to produce corporate documents in the last hours of trial which plaintiff had been demanding throughout pretrial discovery." Id. (citing LaBadie, 672 F.2d at 95). In addition, Defendants point to Lebron v. Powell, 217 F.R.D. 72 (D.D.C. 2003), in which the court held that "the most fundamental responsibility imposed upon a party engaged in discovery [is] to provide honest, truthful answers in the first place and to supplement or correct a previous disclosure when a party learns that its earlier disclosure was incomplete or incorrect." Id. at 10 (quoting Lebron, 217 F.R.D. at 76.) Defendants maintain that Plaintiffs "did not live up to that responsibility when they identified nineteen additional witnesses almost six weeks before discovery closed." Id.

As to their decision to file a motion to strike instead of a requesting an extension of time for discovery, Defendants contend that both parties "have adopted an aggressive litigation posture." Id. at 9. Defendants felt that moving to extend the discovery deadline would leave them open to charges of creating undue delay. Id. at 10 n.2.

### B. Sanctions Are Warranted for the First Motion to Strike

Defendants should be made to pay for the fees and expenses Plaintiffs incurred in resisting Defendants' Motion to Strike Untimely Witness Designations and Defendants' Second Motion to Strike Plaintiffs' Second Supplemental Answers to Defendant Capital Management and Development Corporation's First Set of Interrogatories 4, 5 and 6.

Rule 11 of the Federal Rules of Civil Procedure specifies that by filing a motion, such as the Defendants' motion to strike, counsel is certifying that the legal contentions advanced in the motion are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law. Fed. R. Civ. P. 11. There is no basis to move to strike a supplementation of an initial disclosure of potential witnesses under the Federal Rules of Civil

4

Procedure that occurs during the discovery period, provided there is no evidence of "gamesmanship," such as having the information earlier but waiting until the day discovery ends to reveal it. Indeed, the Federal Rules of Civil Procedure *require* such supplementation if potential witnesses were identified in the initial disclosures made under Rule 26(a)(1) or in response to an interrogatory that demanded that information. Fed. R. Civ. P. 26(e). As I explained in my Opinion, there is no specific deadline by which initial disclosures must be supplemented, and responses to interrogatories must be filed "seasonably." Mem. Op. at 11. Thus, there is absolutely no support for the Defendants' contention that a court can strike such supplementations done during the discovery period when there is no evidence of the gamesmanship I have condemned.

Defendants' contention that the Court can look to factors other than timeliness and thus strike a timely supplemental designation is not supported by the authorities on which they rely. In Phillip Morris, the government added 650 additional racketeering allegations to the racketeering acts it had originally identified *after* the close of discovery when it moved for summary judgment. Phillip Morris, 219 F.R.D. at 198; see also Plaintiffs' Reply to Defendants' Memorandum in Response to Order to Show Cause ("Pls. Rep.") at 21.[1] That is nothing like the situation here.[2]

I certainly appreciate that there may be cases in which the supplementation disrupts the discovery schedule. In that case, the parties can do the unthinkable: talk to each other and

---

[1] Besides, Defendants could not have relied on this authority at the time they filed its motion as the decision did not come down until eight months following the Defendants' filing.

[2] Similarly, Defendants' reliance on Pearce v. E.F. Hutton Group, Inc., 117 F.R.D. 480 (D.D.C. 1987), is equally unavailing because the witnesses in that case were identified on the last day of discovery, not thirty to fifty days prior to the close of discovery as in this case. See Defs. Resp. at 9.

5

collaborate on a reasonable solution to include a joint motion to extend the discovery deadline to permit additional depositions. Defendants did not do that here because the parties had adopted what Defendants call "an aggressive litigation posture." Def. Resp. at 9. All one can say to that is that those who live by the sword will die by the sword. When one makes an unjustified motion rather than seeking some other solution to a problem, one should not surprised that one has to pay for the consequences.

IV.   **Responses to Show Cause Order for Defendants' <u>Motion to Strike Plaintiffs' Second Request for Admissions to Defendants</u>**

     A.   **Background**

On June 30, 2003, Plaintiffs mailed and faxed to Defendants a second request for admissions. Mem. Op. at 9. Defendants claimed in their second motion to strike that they did not receive the faxed copy of the request for admissions, but they did receive a copy via mail on July 3, 2003, after which Defendants moved to strike the request as untimely because the response to it was due after the discovery deadline of July 30, 2003. Id.

This Court found Defendants had the request in hand on June 30, 2003, and thus had thirty days to respond prior to the July 30, 2003, discovery deadline as required by Rule 36(a) of the Federal Rules of Civil Procedure. Id. Additionally, this Court found that the request, which consisted of thirty-eight simple statements, was not unduly burdensome and rejected Defendants' argument that the request included legal terms that they should not be required to interpret. Id. at 9-10.

Defense counsel, Mr. Parler, now explains in an affidavit attached to Defendants' response to the order to show cause that he was out of the office when the fax arrived and there was nothing in his file noting the receipt of a fax. Def. Resp., Ex. 2. Therefore, he was unaware

of the fax until the Court's Order and Memorandum Opinion of February 26, 2004. Id. at ¶ 7. But, Plaintiffs sent a letter to Defendants on July 21, 2003, specifically stating that the fax was sent on June 30, 2003, and attached to it a fax confirmation sheet that indicated that the request for admissions was faxed on June 30, 2003, at 4:07 p.m. Pls. Reply at 4-5.[3] Mr. Parler's response is that he did not carefully review the affidavit, representing that the request for admissions was not received until July 3, 2003, before signing the affidavit, and that the representation in it concerning when the request was received was in error. Defendants' Reply Memorandum in Response to Order to Show Cause ("Def. Reply") at 8.

Additionally, now in their response to the Court's show cause order, Defendants defend their original argument that the request for admissions unduly burdensome as they were not thirty-eight simple requests as the Court found, but actually thirty-eight requests requiring 114 distinct answers. Defs. Resp. at 13. According to Defendants, these additional requests were especially burdensome in light of all the activity in the case at that time. Defendants concede that they did not provide a detailed affidavit to support their claim of burdensomeness; but, they reiterate their argument that Plaintiffs were not prejudiced because they received complete answers. Id. at 14-15.

Finally, Defendants clarify the objections made to Plaintiff's request for admissions. Id. at 14-15. Defendants concede that their objections were "used too broadly" and "not the model of clarity," but insist that they have a valid objection to the requests on the grounds that the

---

[3] Additionally, Plaintiffs remind the Court that in Plaintiff's Opposition to Defendants' Motion to Strike Plaintiffs' Request for Admissions and Request for Sanctions, filed on August 8, 2003, Plaintiffs again specifically stated that the materials were faxed on June 30, 2003. Id. at 6.

7

requests elicit legal conclusions. Id. at 15.

### B.      Sanctions Are Warranted for the Second Motion to Strike

   1.    Timeliness

Whatever may be the truth as to what Mr. Parler knew when he filed the motion to strike about his receipt of the request for admissions, he cannot deny that, as he now concedes, he knew from Plaintiffs' letter of July 22, 2003, that the request had been faxed to his office on June 30, 2003. Nevertheless, he did not withdraw the motion and forced me to rule upon it. I can see no principled difference between making a false representation to a court and failing to withdraw a motion that is based on a representation that one learns is false after one has filed it. Both are equally sanctionable.

   2.    Burdensomeness

It must be recalled that the entire "argument" (other than timeliness) made in support of Defendants' motion to strike consists of the following two paragraphs:

> 4.     Plaintiffs have previously filed Request for Admissions to the Defendants. The present requests, in addition to being late, are unduly burdensome, broad and oppressive. The requests further seek admissions on legal terms with which the Defendants are not familiar. Thus, Defendants have objected to each and every request on the grounds of lateness and that the requests themselves are improper.
> 5.     Further, Defendants have been fully deposed on these issues and Plaintiffs' claim to need Plantiffs' responses to these "Request for Admissions" is, at best, disingenuous.

Motion to Strike Plaintiffs' Second Request for Admissions to Defendants at 2. Attached to the motion were the Second Request for Admissions as propounded by Plaintiffs; the attachment did not contain any answers. No memorandum of points and authorities in support of Defendants' motion was ever filed.

8

Confronted with this filing, I first concluded that the conclusory boilerplate assertion of burdensomeness was insufficient. Mem. Op. at 9-10. I then indicated I had reviewed the Second Request for Admissions and found that they consisted of thirty-eight numbered simple declaratory sentences and they could not be characterized as burdensome or calling for legal conclusions. Nor could I understand an objection based on their requiring "admissions on legal terms" with which they are not familiar and, even if they did, their counsel could interpret those terms. Id.

Now, however, as is obvious, Defendants advance arguments that they never did before in support of their motion, i.e., (1) that there were really required to provide 114 answers to the thirty-eight requests; (2) that Plaintiffs were not prejudiced because they supposedly received complete answers; and (3) the request called for admissions as to legal conclusiosn. I cannot permit these Defendants to make a motion that is not supported in any way and, when called upon to justify why they filed it, present arguments they never advanced in the first place.

In any event, I have reviewed the request over again and I am mystified how anyone could read them to require 114 answers or to be demanding legal conclusions of any kind.

For these reasons, Defendants' actions relating to this motion to strike merit sanctions.

V.      **Responses to Show Cause Order for <u>Defendants' Motion Objecting to Subpoenas Served on Royal & SunAlliance Insurance Company and Chubb Insurance</u>**

On July 15, 2003, Plaintiffs served a subpoena on the Chubb Group of Insurance Companies to allow Plaintiffs' counsel to inspect and copy certain documents. Mem. Op. at 12. The Court, citing Rule 45(c), stated that only those persons commanded to produce or permit inspection by a subpoena can object to that subpoena. Id. Defendants, therefore, had no authority to object to the subpoenas.

Defendants claim that they had "personal rights and privileges with respect to the information requested in the subpoenas" and that any documents procured in response to those subpoenas would include documents protected by the attorney-client and work product privileges. Def. Resp. at 16.  Defendants cite cases from numerous jurisdictions to support the assertion that a motion to quash or modify a subpoena *duces tecum* can be made not only by the party to whom the subpoena is directed, but also by a party holding a "personal right or privilege with respect to the subject matter requested in the subpoena." Id. at 16-17 (citations omitted).

An examination of Defendants' motion indicates, however, that the grounds for quashing the subpoenas were (1) they were issued to harass and burden the insurance carriers; (2) the description of one category of documents was "broad enough that it includes documents privileged from disclosure as confidential, attorney work product, or completely irrelevant underwriting, policy application, or marketing materials between the subject insurers and the insureds";  (3) the subpoenas were late; and (4) the office of the party subpoenaed, Royal & SunAlliance, was more than 100 miles from this Court. Defendants' Motion Objecting to Subpoenas Served on Royal & SunAlliance Insurance Company and Chubb Insurance ("Defs. Mot. Obj.") at 2-3.

These are arguments that can only be made the insurance carrier itself.  As I ruled, a party has no standing to seek to quash a subpoena issued to a non-party. Mem. Op. at 12; see also Washington v. Thurgood Marshall Acad., 230 F.R.D. 18, 22 (D.D.C. 2005).  It is certainly true that a party may challenge a subpoena when enforcement of it may disclose information that that party can claim is privileged at common law or by statute or rule.  That would mean that the Defendants could challenge enforcement of the subpoena if they showed it threatened the disclosure of information that was protected by the attorney-client or work product privileges.

10

But, these Defendants could not challenge the subpoena on the grounds that it threatened the disclosure of information that was privileged because of the attorney-client relationship between the insurance carrier and its counsel or because it represented the work product of the insurance carrier's counsel. They have no standing to make such an objection. To make a legitimate claim of privilege the Defendants would have had to show some reason to believe that the subpoena threatened the disclosure of information that was protected by a privilege that these Defendants could claim, such as a confidential communication between themselves and their counsel or the work product of their lawyers. They, of course, made no such showing whatsoever and their objection to the subpoena had no legal merit.

**VI.   Responses to Show Cause Order for Arguments Made in Opposing <u>Plaintiffs' Motion to Strike Defendants' Specially Retained Expert Witnesses Due to Failure to Abide by the Court's Discovery Order and Rules 26(a)(2)(B) and 35</u>**

   **A.   Background**

Plaintiffs sought to bar what they described as Defendants "specially retained expert witnesses" from testifying. The following chart indicates that name of the witness, why Plaintiffs moved to preclude them from testifying, Defendants' reasons for opposing that motion, Plaintiffs' reply, and the Court's ruling:

| Witness | Claimed deficiency | Response | Plaintiffs' Reply | Court's Ruling |
|---|---|---|---|---|
| Buchholz | Independent medical examiner ("IME"); no final report provided pending receipt of additional information of potential pertinence | Plaintiff's disclosures were late so Defendants should be permitted to call him in rebuttal | Entitled to report because IME and also because he was listed as expert witness report | IME examiner must produce a report, whether or not he is to be called as witness |

11

| | | | | |
|---|---|---|---|---|
| Antell | Produced computerized report of testing | Report was contained in July 13, 2003 disclosure | Report was not prepared and signed by her; required to file report of examination made pursuant to Rule 35 | Computer generated printout of results are not a report by the doctor |
| Shedlin | No report | Not to be called | | |
| Maccini | No report | Not to be called | | |
| Sherman | No fee schedule, no list of cases provided until June 19, 2003; did not disclose police reports relied upon | Not prejudiced by brief delay in getting list of cases; Sherman did not rely on reports; Defendants' interviews are work product | Rule requires disclosure of what expert considered even if he did not rely upon it; not work product; defendants admit that they failed to make all disclosures by June 14, 2003 | Since Plaintiffs have reports, spending more time on issue is not profitable; disclosure of work product to expert waives the privilege |
| Gordon | Named for first time on June 23, 2003, curriculum vitae is outdated and no list of cases in which he testified | Report provided by overnight mail on August 22, 2002; not designated due to an administrative oversight; does not maintain list of cases but faxed a draft list on July 8, 2003; rate is $420 an hour | While Plaintiffs got report August 22, 2002, no indication until after June 14, 2003 order that he would be a witness; handwritten list disclosed on July 8, 2003, nearly a month after it was due, is useless jumbled list of years and names | Will be deemed to charge $420; list of cases provided is insufficient |

In response to the order to show cause, however, Defendants argue that (1) they had a good faith basis to assert that their experts should not be precluded from testifying because Plaintiffs were not prejudiced by any insufficient disclosure, and Rule 37(c)(1) permits preclusion only when the failure to disclose an expert witness is prejudicial; (2) discovery from non-testifying experts, like Mancini, is available only upon a showing of exceptional circumstances; (3) Rule 35 does not require the independent medical examiner to produce a report of the examination but only to produce one that has been prepared *if it exists*; (4) since Plaintiffs had already produced reports from their own neurophysiologist and neurologist, they could not show the required exceptional circumstances that must be shown to have discovery of the facts known and the opinions held by a non-testifying expert. Defs. Resp. at 19-21. As to the latter contention, Defendants quote nearly three pages from Brown v. Ringstad, 142 F.R.D. 461 (S.D. Iowa 1992), that they claim stands for the proposition that a showing of "exceptional circumstances under which it is impracticable for the parties seeking discovery to obtain facts on the same subject by other means" is required before a party can seek discovery of a report prepared by a non-testifying Rule 35 witness. Id. at 21 (quoting Brown, 142 F.R.D. at 461).

**B.   Sanctions Are Warranted for Frivolous Arguments Relating to Expert Reports**

There are so many things wrong with these arguments that it is difficult to know where to begin.

First, a comparison of the arguments made in response to the order to show cause with the chart indicates that Defendants are advancing arguments in their response that they never made in opposition to Plaintiff's motion to strike. Defendants advanced no argument whatsoever as to any exceptional circumstances permitting the discovery of Shedlin and Mancini but only

13

indicated that they were not going to call them.  Having been so advised, Plaintiffs did not contend that they were entitled to discovery from Shedlin and Mancini. See Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion to Strike Defendants' Specially Retained Expert Witnesses.  Thus, the issue of whether there would be discovery from non-testifying experts was never in play and a rule pertaining to non-testifying experts cannot possibly have any bearing on whether Defendants made the required disclosures as to expert witnesses they did intend to call.

Second, Defendants never advanced any argument that the independent examiners, Buchholz and Antell, were not required to produce a report. Instead, as the chart indicated, Defendants argued as to Buchholz that since Plaintiffs' disclosures were late Defendants should be permitted to call him in rebuttal, and that Antell did produce a report.

Third, since Buchholz, Antell, Sherman, and Gordon were going to be called as witnesses, Defendants never argued that Plaintiffs' ability to secure opinions from their own experts barred their motion to strike.  Moreover, that argument does not make any sense. Once again, the rule that requires a showing of exceptional circumstances before permitting discovery of non-testifying experts, and that might be interpreted to preclude discovery from non-testifying experts if the information is available from other sources (such as a party's own experts), has nothing whatsoever to do with requiring disclosures of information about expert witnesses who will be called as witnesses.

The simple truth of the matter is that Defendants did not make the disclosures as to their expert witnesses that are required by the Federal Rules of Civil Procedure and Plaintiffs had no choice but to move to strike them.  Defendants' opposition to that motion was meritless and not supported by existing law.

There is, however, one exception: the dispute about the notes made available to Dr.

Sherman. The Court resolved this issue, finding that the documents provided to Dr. Sherman must be turned over to Plaintiffs, regardless of any claim of privilege, but did note that there was authority to the contrary. Mem. Op. at 8. I will not sanction Defendants for claiming the work product privilege and will discount for that when I assess the fees that I will award.

## VI.   Conclusion

Defendants will be required to compensate Plaintiffs for attorneys' fees and costs expended in responding to each of these motions and this order to show cause. Plaintiffs are to provide to the Court an affidavit detailing the relevant fees and expenses within two weeks of the date of this Memorandum Opinion.

An Order accompanies this Memorandum Opinion.


_____/s/_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: April 24, 2007